IN THE DISTRICT COURT OF THE UNITED STATES FOR THE

MIDDLE DISTRICT OF ALABAMA, NORTHERN DIVISION

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | ) | |
| | ) | CRIMINAL ACTION NO. |
| v. | ) | 2:21cr181-MHT |
| | ) | (WO) |
| **ALTWANA JAMAL SAVAGE** | ) | |

OPINION AND ORDER

This criminal cause is before the court on whether defendant Altwana Jamal Savage has the mental capacity to be criminally sentenced--that is, whether he is "presently suffering from a mental disease or defect rendering him mentally incompetent to the extent that he is unable to understand the nature and consequences of the proceedings against him or to assist properly in his defense." 18 U.S.C. § 4241(a).

Based on the evidence in the record and the testimony presented at a competency hearing on December 8, 2022, the court concludes by a preponderance of the evidence that Savage is not currently mentally competent. The court will therefore commit him to the custody of the Attorney General for a reasonable period of time, not to

exceed four months, for a determination of whether he will attain competency within the foreseeable future. *See* 18 U.S.C. § 4241(d)(1).

### *A. Background*

Savage pled guilty to possessing a firearm as a convicted felon in violation of 18 U.S.C. § 922(g)(1). He is before the court to be sentenced. Sentencing began on April 25, 2022. At that hearing, based on the court's perception of Savage and his criminal history, the court continued sentencing to have him psychologically evaluated for the purpose of determining an appropriate sentence. The evaluation, which was receives on August 15, 2022, recommended that Savage's IQ and learning ability be assessed. *See* Psychiatric Report by Dr. Carla Smith Stover (Doc. 79). Thereafter, the court ordered that assessment, and Savage was diagnosed with having a Mild Intellectual Disability. *See* Psychiatric Report by Dr. Kale Kirkland (Doc. 85). In light of that report, the court ordered Dr. Kale Kirkland to conduct a

2

follow-up evaluation of Savage's competency to proceed. Dr. Kirkland filed the report on November 30, 2022. *See* Psychiatric Report by Kale Kirkland (Doc. 91). The court then held a competency hearing on December 8, 2022, where Dr. Kirkland was the sole witness. At the hearing, the government orally requested that Savage be sent to the Bureau of Prisons (BOP) for a second competency evaluation.

### *B. Whether a Second Evaluation is Appropriate*

Before determining Savage's competency, the court must address the threshold issue of whether to grant the government's request that Savage be evaluated by the BOP too. For the following reasons, the court will not order such a second evaluation.

When holding a competency hearing pursuant to U.S.C. § 4241(b), the court may, prior to the date of the hearing, order a psychiatric or psychological examination of the defendant. The decision to examine for competency is governed by § 4247(b), which provides that the court

may order one examiner, or "if the court *finds it appropriate* ... more than one such examiner." 18 U.S.C. § 4247(b) (emphasis added). Regardless, each examiner "shall be designated by the court" when proceeding under § 4241.

Here, despite the government's oral request at the day of the hearing, the court does not find it appropriate to order a second evaluation to be conducted by the BOP. Frist, sentencing has already been delayed eight months in this case (and Savage has already been in custody for over 16 months on a charge that has a Sentencing Guideline range of 27 to 33 months). Second, the government did not challenge Dr. Kirkland's expertise, nor has it given any reasons to doubt the expert conclusions outlined in his report. And, third, the government has not explained why a local provider could not provide an adequate expert report--especially with a quick turnaround, since the BOP which likely could take months. *See United States v. Mosley,* 277 F. Supp. 3d 1294, 1299–300 (M.D. Ala. 2017) (Thompson, J.) ("This court has held that due process

4

requires the government to 'offer evidence to establish the presence of compelling governmental interests which would require [the defendant's] competency evaluation to be conducted pursuant to a custodial commitment at a BOP facility, rather than on an outpatient basis.' *United States v. Mock*, No. 2:12cr104-MHT, 2014 WL 1491198, at *3 (M.D. Ala. Apr. 15, 2014) (Thompson, J.); *cf. United States v. Song*, 530 Fed.Appx. 255 (4th Cir. 2013) (finding similar due process requirements for the decision to detain individual for pretrial evaluation of insanity defense); *United States v. Deters*, 143 F.3d 577 (10th Cir. 1998) (same); *cf. also United States v. Neal*, 679 F.3d 737, 742 (8th Cir. 2012) (same, for evaluation of competency to stand trial). Although Mosley is currently incarcerated, due process concerns may nonetheless be implicated by the decision to transfer him to BOP for an evaluation, rather than ordering a local, non-custodial evaluation. *Cf. Vitek v. Jones*, 445 U.S. 480, 491 (1980) (holding that although a conviction extinguishes a prisoner's liberty interest to be free

from confinement, a prisoner retains certain due process rights that require 'the transfer of a prisoner from a prison to a mental hospital [to] be accompanied by appropriate procedural protections')."). Accordingly, the government's request for a second evaluation by the BOP is denied. The court will, therefore, now turn to the issue of competency.

### C. Competency Determination

Courts apply a two-part test to determine competency. *See Bundy v. Dugger*, 850 F.2d 1402, 1408 (11th Cir. 1988). First, the court determines whether "the defendant suffer[s] from a clinically recognized disorder[ ]." *Id.* If the defendant does, then the court determines whether "that disorder render[s] the defendant incompetent." *Id.* For a defendant to be considered competent to stand trial and subsequent proceedings, he must have both the "sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding" and "a rational as well as factual understanding of the

6

proceedings against him." *Dusky v. United States*, 362 U.S. 402, 402 (1960).

Based on his review of Savage's educational and medical documents, other psychological evaluations, and his own administration of a suite of IQ and other tests, Dr. Kirkland concluded that Savage has a Mild Intellectual Disability. Savage obtained a full-scale IQ score of just 62. Dr. Kirkland also evaluated Savage using the ECST-R, a measure designed to assess an individual's knowledge of the courtroom and the trial process while also assessing for the presence of symptoms associated with a thought disorder within that context. Using this measure, Dr. Kirkland found that Savage "does not possess an adequate factual understanding of the legal proceedings against him." Competency Evaluation (Doc. 91) at 6. Dr. Kirkland's conclusion was based on several discrete data points in conjunction with Savage's intellectual disability diagnosis. For example, "Savage's answers to questions regarding his factual understanding of the legal proceedings against him were

inconsistent." *Id.* He had "significant misunderstanding about why he was arrested." *Id.* He reported that he had been found guilty by a jury, even though he entered a guilty plea and never stood before a jury. Despite being charged as a felon in possession, he represented that he was arrested and charged because he "didn't have a [gun] license." *Id.* When asked about the concept of testifying, he said, "[W]hat does testify mean? Like tell on somebody?" *Id.*

In sum, Dr. Kirkland evaluated Savage by way of interview, a mental status examination, IQ testing, and the administration of the ECST-R and concluded (1) that Savage had a Mild Intellectual Disability, and (2) that he "is not capable of adequately assisting in his own defense" considering his present intellectual-deficits. *Id.* at 7. While testifying at the hearing on December 7, 2022, Dr. Kirkland represented that he believed Savage is capable of attaining competency if he is provided with education-based restoration treatment. There were no

8

other conflicting reports from experts as to Savage's competency.

Accordingly, based on the expert testimony and the evidence in the record, the court concludes by a preponderance of the evidence that Savage is not competent to be sentenced at this time. The court finds that he does not have a "sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding," nor does he presently have "a rational as well as factual understanding of the proceedings against him." *Dusky*, 362 U.S. at 402.

### D. Restoration Commitment

Once a defendant has been found incompetent to stand trial, the court must, pursuant to 18 U.S.C. § 4241(d)(1), order that the defendant be committed to the Attorney General for hospitalization until it can be determined whether a substantial probability exists that within the foreseeable future the defendant will regain the capacity to be tried.

*See United States v. Donofrio*, 896 F.2d 1301, 1302 (11th Cir. 1990). Section 4241(d)(1) limits the defendant's confinement to four months, and any additional period of confinement depends upon the court's finding there is a substantial probability "that within the additional time he will attain capacity to permit [further proceedings], 18 U.S.C. § 4241(d)(2)(A), or if he is found to create a substantial risk to himself and to others, pursuant to 18 U.S.C. § 4246." *Id.* at 1303.

Pursuant to § 4241(d)(1), the court will order that Savage be committed to the custody of the Attorney General for a reasonable period of time, not to exceed four months, so that the BOP can determine whether there is a substantial probability that in the foreseeable future Savage will attain the capacity to permit the criminal proceedings against him to go forward.

The court will further order that, once a determination is made as to whether Savage can be restored and before the expiration of the four-month statutory period, BOP is to prepare and file a

10

psychological report with this court. This report should summarize the course of Savage's evaluation and treatment. It should also state BOP's findings, opinions, and conclusions regarding Savage's attainment of competency to proceed in this case, including whether BOP believes that there is a substantial probability that Savage will, in the foreseeable future, attain the capacity to permit the trial to proceed. Once the court receives this report, it will determine whether Savage's commitment period needs to be extended pursuant to 18 U.S.C. § 4241(d)(2) for an additional reasonable period until his mental condition is so improved that trial may proceed.

***

Accordingly, it is ORDERED as follows:

(1) It is declared, pursuant to 18 U.S.C. § 4241(d), that defendant Altwana Jamal Savage is currently mentally incompetent for further proceedings in

11

this case--that is, he is currently suffering from a mental disease or defect rendering him mentally incompetent to the extent that he is unable to understand the nature and consequences of the proceedings against him and to assist in his defense.

(2) Pursuant to 18 U.S.C. § 4241(d)(1), defendant Savage is committed to the custody of the Attorney General for such reasonable period of time, not to exceed four months from the date of his admission to the appropriate federal mental-health facility, as is necessary for the Federal Bureau of Prisons (BOP) to determine whether there is a substantial probability that in the foreseeable future he will attain the capacity to permit the trial to proceed.

(3) No later than four months from the date of defendant Savage's admission to the appropriate federal mental-health facility, the examiners designated to conduct or supervise his treatment shall file with this court and counsel of record

a written psychological report. The report shall summarize the course of defendant Savage's evaluation and treatment. It shall also state BOP's findings, opinions, and conclusions regarding defendant Savage's attainment of competency to proceed in this case, including whether BOP believes that there is a substantial probability that defendant Savage will, in the foreseeable future, attain the capacity to permit the trial to proceed.

(4) The United States Marshal for this district shall immediately coordinate with the Attorney General to organize defendant Savage's removal to the custody of the warden of an appropriate BOP Institution as may be designated by the Attorney General.

DONE, this the 13th day of December, 2022.

/s/ Myron H. Thompson
**UNITED STATES DISTRICT JUDGE**